WILLIAMS & COPELAND, Inc., et al. v. CALVIN et al.

No. 35190.    Oct. 21, 1952.

*249 P. 2d 414.*

George Fisher, Oklahoma City, for petitioners.

Schwoerke & Schwoerke, Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

BINGAMAN, J.  This is a proceeding by Williams & Copeland, Inc., and its insurance carrier to review an award of the State Industrial Commission awarding compensation to respondent Dennis F. Calvin.

On February 16, 1950, respondent filed his first notice of injury and claim for compensation in which he stated that on January 4, 1950, while in the employ of the petitioners Williams & Copeland, Inc., he sustained an injury to his back resulting in some permanent disability to his person. The injury was caused by a pair of oil well drilling tongs striking him across the back.

The trial commissioner, in substance, found: that on January 4, 1950, respondent, while in the employ of petitioners Williams & Copeland, Inc., sustained an accidental personal injury to his back; that he had been theretofore awarded compensation for temporary total disability from the date of the injury less the 5-day waiting period for not exceeding 300 weeks, or until the further order of the commission; that compensation was paid by petitioners up to and including September 20, 1950; that he was entitled to further compensation for temporary total disability from that date up to and including November 25, 1950, at the rate of $25 per week, or in the sum of $241.67, and further found that as a result of said injury respondent sustained a 50 per cent permanent partial disability to his body as a whole and was entitled to compensation for such disability for 250 weeks at the rate of $25 per week, or a total sum of $6,250, and entered an order awarding respondent compensation accordingly. The award was sustained on appeal to the commission en banc.

Petitioners bring the case to this court to review this award. They do not, however, contend that the evidence is insufficient to sustain the finding and award of the commission.

It appears that during the progress of the hearing petitioners on several different occasions tendered respondent an operation to correct his trouble which was declined. It is the contention of petitioners that respondent's refusal to accept the tendered operation was unreasonable, arbitrary and prejudicial to their rights. They rely solely upon this ground to vacate the award.

The record discloses that on the hearing for compensation for temporary total disability the commission found that

respondent was in need of further medical treatment and ordered petitioners to furnish him such treatment. At the request of petitioners respondent went to a doctor selected by them for further treatment. This doctor advised him that an operation to his back was necessary. Thereafter, and in July, 1950, the operation was performed. Respondent remained in the hospital for several weeks and was released. The operation did not help him and sometime thereafter he called upon the doctor who assisted in the operation and was advised by him to return to the hospital for further treatment. He then returned to the hospital and was placed in a large plaster cast from his hips up over his chest. When the cast dried it became so tight around his chest that he was unable to breathe properly. He tried to get in touch with the attending surgeon but was unable to do so. He then called the house physician who agreed that the cast was too tight and with an electric saw he sawed into the cast and loosened it so as to allow respondent to breathe properly. Respondent then left the hospital and wore the cast until September 21, 1950, when he informed the surgeon selected by his employer that the cast was of no benefit to him. This doctor removed the cast and informed respondent that he did not care to see him again. The doctor made a report to petitioners in which he stated that he had dismissed the patient; that he did not think he was sincere in his complaints, and that he would have no permanent disability. Upon receipt of this report petitioners ceased further payments of temporary total compensation and respondent then presented an application asking the commission to enter an order requiring petitioners to continue payments.

The commission at that hearing ordered respondent to return to the hospital for further treatment and surgery if necessary. Respondent refused to permit the doctor furnished by his employer to further treat him and petitioners then sent him to another physician and surgeon who examined him and reported that he needed no further treatment.

Respondent then filed an application for a hearing as to the extent of permanent disability. At that hearing he testified that he consulted a physician of his own choice; that the doctor advised him that another operation was necessary and he at that time agreed to an operation. Arrangements were made for this surgeon to perform the operation, but when the time arrived to operate respondent changed his mind and declined the operation. He testified he did so because he did not think he could stand the operation at that time. He, however, further testified that he intended to have the operation performed at some future date by a surgeon of his own choosing and that his present intention was to have it performed by the surgeon agreed upon; that he was tired of fooling with petitioners; that the treatment he had received up to date was of no benefit to him. He did not want the case delayed any longer but wanted it tried and disposed of.

The last doctor as well as other physicians diagnosed respondent's trouble as a severe sacroiliac sprain and stated that he needed a bone fusion of the left sacroiliac joint; that an operation was necessary to correct this trouble. He further testified that an operation of that kind would be classified as a major operation, but if not performed respondent would have a permanent disability of from 45 to 50 per cent; that if successfully operated upon his permanent disability would probably be reduced to about 10 per cent. Other physicians testified that an operation would probably reduce respondent's permanent disability to 20 per cent. From this evidence it would appear that the benefit respondent would receive from an operation is problematical.

As to the risk incident to the operation the doctor testified an operation of this kind is more difficult than the ordinary lumbosacral fusion, the mortal-

ity rate is higher. The doctor further testified:

"Q. Doctor, on this type of operation as tendered the claimant, is it your opinion of that class of major operations in which the element of casualty or possibility of endangering the man's life, I would like to know to what degree is the operation endangering to life? A. Well, in this operation they lose a considerable amount of blood although we replace the blood where they are on the table as we work around some very large vessels, and we always warn any patients of the possibility of things like that."

It is clear from the evidence of the doctor that there is some danger of loss of life in connection with an operation of this kind. The commission was therefore without jurisdiction to order respondent to accept the tendered operation. Steelman v. Justice, 204 Okla. 117, 227 P. 2d 647; K. Lee Williams Theatres, Inc., v. Mickle, 201 Okla. 279, 205 P. 2d 513.

Petitioners argue that under respondent's own evidence his refusal to accept the tendered operation was unreasonable and arbitrary; that he did not decline the operation because he was afraid that it might be dangerous to life or limb, nor was the operation declined on the ground that it was a major one; that his strategy was to get the highest award possible and then have the operation performed and pocket the difference. The answer is that respondent has the right to voluntarily assume the risk of an operation if he should choose to do so, but under the evidence and above authorities the commission was without authority to order him to take the risk.

The contention of petitioners that respondent's refusal to accept the tendered operation was unreasonable and arbitrary is without substantial merit.

Award sustained.

HALLEY, V. C. J., and WELCH, CORN, JOHNSON, and O'NEAL, JJ., concur.